**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHN LEE WILKES,

                 Plaintiff,

                                     Case No. 3:13-cv-1351-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

       John Lee Wilkes ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is due to "abdominal pain," a "lower back problem," and intellectual deficiencies.  Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed April 3, 2014, at 189, 230 (some emphasis and capitalization omitted).  On July 8, 2010, Plaintiff filed the applications for DIB and SSI, alleging an onset disability date of April 15, 2010.  Tr. at 147-50 (DIB), 151-59 (SSI).  Plaintiff's applications were denied initially, see Tr. at 67, 73-76 (DIB), 68, 77-80 (SSI), and were denied upon reconsideration, see Tr. at 69, 89-91 (DIB), 70, 92-94 (SSI).

       On November 9, 2011, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE").  Tr. at 35-66.  At the time of the hearing, Plaintiff was forty-two (42)

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed April 3, 2014; Reference Order (Doc. No. 13), signed April 4, 2014 and entered April 7, 2014.

years old.  Tr. at 46.  On February 21, 2012, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims.  Tr. at 17-29.  Plaintiff then requested review by the Appeals Council, Tr. at 12, and submitted evidence to the Council in the form of a memorandum authored by his attorney representative, Tr. at 5-6.  On September 4, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.   On November 4, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether the ALJ "accurately and substantially considered all of [] Plaintiff's diagnosed impairments with emphasis on [] Plaintiff's pain disorder"; and  whether the ALJ "substantially considered [] Plaintiff's reduced intellectual functioning."[2] Memorandum in Support of Plaintiff's Position (Doc. No. 17; "Pl.'s Mem."), filed July 3, 2014, at 1[3] (some capitalization omitted); see id. at 6, 11.  On September 9, 2014, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.").  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings for the reasons stated herein.

---

[2]      For ease of discussion, the undersigned has rearranged the order in which Plaintiff presents the issues.

[3]      Citations to Plaintiff's Memorandum are to the pagination assigned by the Court's electronic filing system.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 19-28.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since April 15, 2010, the alleged onset date."  Tr. at 19 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: lumbar degenerative disc disease; hypertension; abdominal pain secondary to gastroesophageal reflux disease; reduced intellectual functioning[;] and anxiety."  Tr. at 19 (emphasis and citations omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 20 (emphasis and citations omitted).

_____

[4]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

[Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) involving no climbing ladders, ropes, or scaffolds, no more than occasional climbing ramps or stairs, balancing, kneeling, crouching, crawling, or stooping, the avoidance of dangerous work hazards like unprotected heights and exposed machinery, and the ability for a sit/stand option with a change of position opportunity as often as every [] 45 minutes. From a mental standpoint, [Plaintiff] is limited to uncomplicated, routine tasks that are performed at a non assembly or non fast-paced production rate and that require reasoning, math, and language skills comparable to, or less than, General Educational Development level 2.

Tr. at 22-23 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work." Tr. at 27 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("40 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 27 (emphasis and citations omitted), including "marker and ticket taker," Tr. at 28. The ALJ concluded that Plaintiff "has not been under a disability . . . from April 15, 2010, through the date of th[e D]ecision." Tr. at 28 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises two issues on appeal.  Both of the issues arise from the ALJ's handling of an opinion authored by Allison Keiter, Psy.D., a consultative psychologist.

Dr. Keiter examined Plaintiff on December 16, 2011, following Plaintiff's November 9, 2011 hearing in front of the ALJ.  Tr. at 443-48.  It appears that the examination was ordered by the ALJ because there were some questions regarding Plaintiff's intellectual functioning.  See Tr. at 46-49.

Dr. Keiter noted the following regarding the examination:

Upon examination, [Plaintiff]'s demeanor and responsiveness to questions [were] cooperative initially; however, towards the end of the evaluation, [Plaintiff] became more and more agitated, irritable, and hostile.  His manner of relating, social skills, and overall presentation was poor due to his hostility. . . .

He had difficulties maintaining his level of frustration.  He exhibited symptoms of anxiety during the testing such as moving about in his seat and fidgeting which may be related to his symptoms of back pain.  On two occasions, he stood up to stretch and move around during the evaluation.  By the end of the

> evaluation, [Plaintiff] was extremely irritable, frustrated, and began yelling at the examiner.
>
> Results of the evaluation are not considered to be a valid and reliable estimate of his current functioning due to his difficulties with poor frustration tolerance which affected his motivation to perform well.

Tr. at 444-45.

Dr. Keiter administered the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), and based on that test, Plaintiff was assigned a full scale IQ of 67.  Tr. at 445-46.  After summarizing the results of the test, Dr. Keiter noted, "Overall, [Plaintiff] is functioning in the extremely low range of intelligence.  He appeared to have some difficulties within Processing Speed."  Tr. at 446.  Dr. Keiter also administered "a standardized achievement measure (WIAT-II).  Tr. at 446.  That test yielded a "Reading Composite Score" of 54; a "Mathematics Composite Score" of 71; and a Written Language Composite Score" of 55. Tr. at 446.  Dr. Keiter reported that Plaintiff's "performance on the achievement measure was consistent with data of his Full Scale IQ score."  Tr. at 446.

In terms of Plaintiff's vocational abilities, Dr. Keiter opined:

> Vocationally, [Plaintiff] is able to follow and understand simple instructions and directions.  He is able to perform simple and some more complex tasks independently.  He may have difficulties maintaining attention and concentration at times. He may struggle to maintain a regular schedule. He is capable of learning simple new tasks.  He struggles to make appropriate decisions, relate adequately with others, and appropriately deal with stress.

Tr. at 447.  Dr. Keiter also assigned a number of limitations regarding Plaintiff's ability to function mentally in a day-to-day work environment.  Tr. at 449-50.

Ultimately, Dr. Keiter made a number of diagnoses: "Pain disorder associated with a general medical condition"; "Anxiety disorder, NOS"; "Mild mental retardation"; "High blood pressure"; "Asthma"; "Back pain"; "Chronic obstructive pulmonary disease"; "Swelling feet";

"Blurred vision"; "Problems urinating"; "Occupational and economical difficulties"; and "Difficulties in a social environment." Tr. at 447-48.  Dr. Keiter also assigned a Global Assessment of Functioning ("GAF") score of 68.  Tr. at 448.  She recommended a "psychiatric evaluation to address his current symptoms[.]" Tr. at 448.

## A. Pain Disorder

Plaintiff argues the ALJ improperly ignored Dr. Keiter's diagnosis of "Pain disorder associated with a general medical condition." Pl.'s Mem. at 11-12; see Tr. at 447.  As a result, contends Plaintiff, the RFC does not encompass all of Plaintiff's impairments.  Pl.'s Mem. at 11-12.  Plaintiff further argues that "[t]he ALJ failed to appreciate the fact that [P]laintiff's physical symptoms were classified as a mental disorder by Dr. Keiter because psychological factors played an important role in [P]laintiff's perception of the onset, worsening and severity of his physical symptoms." Id. (citation omitted).

Defendant acknowledges Dr. Keiter's diagnosis of pain disorder and the ALJ's failure to address it.  Def.'s Mem. at 10.  Defendant argues, however, that Plaintiff did not meet his burden at step two of establishing that the pain disorder is a severe impairment.  Id.  Says Defendant, "Plaintiff has not sought treatment for his pain disorder, and that militates against a finding of a severe impairment." Id. at 12 (citations omitted).

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment.  See 20 C.F.R. § 404.1520(a)(4)(ii).  At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect

upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. <u>See id.</u> A claimant has the burden of proving that impairments are severe. <u>See Bowen</u>, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." <u>Davis v. Barnhart</u>, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing <u>Barnhart v. Walton</u>, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." <u>See Bowen</u>, 482 U.S. at 141. The Regulations provide six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); <u>see also Davis</u>, 186 F. App'x at 966-67.

"The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." <u>Burgin v. Comm'r of Soc. Sec.</u>, 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the ALJ must identify, at step two, <u>all</u> of the impairments that should be considered severe." <u>Heatly</u>

v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe.  Any omission of a particular severe impairment at step two is harmless only if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process."  Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

Prior to step four of the five-step sequential inquiry, an ALJ must assess a claimant's RFC.  The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider

a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ failed in the Decision to mention or acknowledge Dr. Keiter's diagnosis of pain disorder.  Defendant essentially urges that the failure is justified because Plaintiff "has not sought treatment for his pain disorder[.]"  Def.'s Mem. at 12.  Yet, the administrative transcript contains documentation of Plaintiff seeking treatment for various types of pain and undergoing a series of tests to determine the cause of his abdominal pain. <u>See generally</u> Tr. at 251-441.  After Plaintiff had undergone the tests in relation to his abdominal pain, a treating specialist at Borland-Groover Clinic, P.A. stated the following in a May 5, 2011 report:

> [Plaintiff is h]aving a lot of stress that I suspect is a major cause of his abdominal symptoms.  Discussed need for psychological assessment.
> . . .
> Patient will call for results of labs.  In the meantime, he will go to [his] [primary care provider] to obtain referral for psychology.

Tr. at 390.  In light of Plaintiff seeking treatment for his various types of pain and in light of the treating specialist suspecting the cause of the abdominal issues (including pain) was psychiatric in nature, Dr. Keiter's diagnosis of pain disorder cannot be ignored.

The failure to identify the pain disorder at step two is not harmless because even though the ALJ identified other severe impairments at that step, it is apparent the ALJ did not account for the effects of pain disorder in later steps of the inquiry.  Again, the ALJ never discussed the pain disorder in the Decision.  And, in discrediting Plaintiff regarding the complaints of pain to the extent they are inconsistent with the assigned RFC, the ALJ largely focused on Plaintiff's "unremarkable" physical examinations; his "noncontributory" diagnostic studies; conservative treatment for Plaintiff's physical symptoms; and "a largely

benign evaluation" by a "consultative physical examiner[.]" Tr. at 24-25.  In other words, the

ALJ focused almost entirely on the lack of physical evidence to support Plaintiff's alleged

pain without considering whether the alleged pain could be a result of the psychological pain

disorder.

    For all of the foregoing reasons, remand is necessary for the ALJ to consider Dr.

Keiter's diagnosis of pain disorder.[5]

## B. Reduced Intellectual Functioning

    Plaintiff contends the ALJ did not adequately consider his reduced intellectual

capacity.  Pl.'s Mem. at 6-10.  According to Plaintiff, the ALJ should have found him to have

met or equaled Listing 12.05(C) at the third step of the sequential inquiry, which would have

rendered him disabled at that step.  Id. at 7.

    At step three of the sequential evaluation process, the burden rests on the claimant

to prove the existence of a listing-level impairment.  Carnes v. Sullivan, 936 F.2d 1215,

1218 (11th Cir. 1991).  Mere diagnosis of a listed impairment is not sufficient.  See, e.g., id.;

see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  "To meet a Listing, a

claimant must have a diagnosis included in the Listings and must provide medical reports

documenting that the conditions meet the specific criteria of the Listings and the duration

requirement."  Wilson, 284 F.3d at 1224 (internal quotations and citations omitted).  "To

---

[5]    Even though Defendant does not argue it, one could argue that the ALJ's failure to
address the diagnosis of pain disorder is harmless because the ALJ did explicitly recognize and consider
Dr. Keiter's assignment of various work-related restrictions arising from Plaintiff's mental issues on the
whole.  See Tr. at 27 (ALJ "find[ing] that [Dr. Keiter's] conclusion of mild-to-moderate job-related
functional limitations are highly probative based on congruency with colloquial information, the lack of
treatment, and GAF rating").  The form on which Dr. Keiter answered questions relating to Plaintiff's
work-related restrictions, however, focuses on how Plaintiff's mental issues affect his ability to follow
instructions; to make decisions; and to interact with others.  Tr. at 449-51.  Although these areas could
certainly cover some of the symptoms of pain disorder, by its nature, pain disorder also includes physical
symptoms that are not addressed by that type of form and about which Dr. Keiter did not opine.

equal a Listing, the medical findings must be at least equal in severity and duration to the

listed findings." Id. (internal quotations and citations omitted).

Listing 12.05 describes the disorder of Intellectual Disability (formally called "Mental

Retardation") and the requirements at issue:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added); see Jordan v. Comm'r of Soc.

Sec. Admin., 470 F. App'x 766, 766 (11th Cir. 2012) (unpublished) (reaffirming that "a

claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive

functioning, as well as satisfying one of the additional criteria").

Here, the ALJ recognized that Plaintiff's "performance (65) and full scale (67) IQ

scores . . . are apparently commensurate with the listing requisites," but the ALJ discounted

the scores based upon Dr. Keiter's explanation that the results of the testing were "'not

considered to be a valid and reliable estimate of [Plaintiff's] current functioning due to his

difficulties with poor frustration tolerance which affected his motivation to perform well[.]'"

Tr. at 22 (quoting Tr. at 445).  Consequently, the ALJ determined that Listing 12.05(C) is not

met.  Tr. at 22.  The ALJ did not err in this regard because the Listing requires a valid IQ

score of 60 through 70 (among other requirements), see 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The ALJ recognized that the absence of a valid score, alone, could end the step three analysis regarding Listing 12.05(C), but she did not stop there. Tr. at 22. She went on to discuss, in detail, why Plaintiff's adaptive behavior does not meet the requirements of the Listing. Tr. at 21-22. Plaintiff quarrels with the ALJ's reliance on his ability to drive, meet basic hygiene needs, contribute to household upkeep, and maintain employment at times, and Plaintiff argues that these abilities alone do not demonstrate sufficient adaptive functioning. Pl.'s Mem. at 9. Plaintiff does not contest whether the reliance on these abilities is supported by substantial evidence. Id. The undersigned finds that the ALJ appropriately relied on the record as a whole in determining Plaintiff adaptively functions higher than that required by the Listing, and the ALJ's reasons are supported by substantial evidence. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)) (stating even "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior").[6]

---

[6]     The ALJ offered another reason for finding that Listing 12.05(C) is not met: "there is no evidence of complementary intelligence testing prior to [Plaintiff's] 22nd birthday, which, again, independently precludes listing qualification under 12.05(C). Tr. at 22. This statement was in error. "[T]here is a presumption that mental retardation is a condition that remains constant throughout life." Hodges v. Barnhart, 276 F.3d 1265, 1266 (11th Cir. 2001). It is presumed, therefore, that absent "sudden trauma," a claimant's IQ scores remain constant over time. Id. at 1268. Even though the ALJ's reason in this regard is infirm, given the other reasons identified by the ALJ, the undersigned finds no error in the ultimate determination at step three that Plaintiff does not meet or equal Listing 12.05(C).

Plaintiff also contends that in light of the "possible inconsistency between Dr. Keiter's reference to invalid IQ testing and Dr. Keiter's diagnosis of mild mental retardation, . . . Dr. Keiter[] should have been re-contacted by the ALJ for clarification relative to the totality of the evidence[.]" Pl.'s Mem. at 8.  "It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)).  "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)).  To remand a case for an ALJ's failure to fully develop the record, there must be a showing of prejudice to the extent that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995).  Prejudice exists when the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence. Id. at 935.   When "the record contains sufficient evidence for the [ALJ] to make an informed decision," the ALJ is not required to further inquire with regard to an alleged mental condition. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281) (finding that a consultative examination is not required in such a situation).

Here, the ALJ specifically discussed the diagnosis of mild mental retardation and discounted it based upon the invalidity of the testing. Tr. at 22, 27.  While there does seem to be some inconsistency between Dr. Keiter's opinion that the testing is not a valid indicator of Plaintiff's functioning and her ultimate diagnosis of mild mental retardation, the reality is

-14-

that the ALJ accepted the ultimate mental work-related limitations that Dr. Keiter imposed so there is no prejudice resulting from the ALJ's election not to clarify Dr. Keiter's opinion.

For the foregoing reasons, the undersigned finds no error in the ALJ's step three analysis.

## V.  Conclusion

After due consideration, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

  (A)    Reconsider Dr. Keiter's diagnosis of pain disorder and its effects on Plaintiff's ability to perform work-related functions; and

  (B)    Take such other action as may be necessary to resolve this matter properly.[7]

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered

---

[7]      The Court leaves to the discretion of the Commissioner Plaintiff's request that a supplemental hearing be held.  See Pl.'s Mem. at 13.

in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under

42 U.S.C. §§ 406(b) and 1383(d)(2)).

      **DONE AND ORDERED** at Jacksonville, Florida on March 6, 2015.

                                 **JAMES R. KLINDT**
                                 United States Magistrate Judge

kaw
copies:
counsel of record

-16-